**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **COURTNEY FUOTI,** | : | **No. 3:18cv1119** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | **(Magistrate Judge Arbuckle)** |
| | : | |
| **ANDREW M. SAUL, Commissioner of** | : | |
| **Social Security,**[1] | : | |
| **Defendant** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Presently before the court is the Report and Recommendation ("R&R") of

Magistrate Judge William I. Arbuckle, wherein Judge Arbuckle recommends that

this action be remanded to the Commissioner of Social Security

("Commissioner") for a new administrative hearing. (Doc. 13). The government

objects to the R&R arguing that the Administrative Law Judge ("ALJ") properly

discounted the medical opinion of Dr. Bruce Bashline, the plaintiff's treating

physician. This matter is now ripe for the court's disposition.

---

[1] At the time the case was filed, the Acting Commissioner of Social Security was
Nancy A. Berryhill, and thus, plaintiff named her as the defendant. Andrew M.
Saul became the Commissioner of Social Security on June 17, 2019. See
OFFICIAL SOCIAL SECURITY WEBSITE,
https://www.ssa.gov/agency/commissioner.html (last accessed March 12, 2020).
Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, as the new
Commissioner of Social Security, Andrew M. Saul is automatically substituted for
the original defendant. FED. R. CIV. P. 25(d).

**BACKGROUND**[2]

On December 12, 2013, plaintiff protectively filed an application for disability insurance benefits under Title II of the Social Security Act. (Administrative Record at (hereinafter "R. at") 15). In this application, plaintiff alleged she became disabled as of October 1, 2013[3], when she was twenty-six (26) years old, due to the following conditions: pain and numbness in body; depression, anxiety; fibromyalgia; thoracic outlet syndrome; irritable bowel syndrome; migraines; tendonitis; acid reflux/gerd. (R. at 224). Plaintiff alleges that the combination of these conditions affects her ability to lift; squat; bend; stand; reach; walk; sit; kneel; climb stairs; see; remember; complete tasks; concentrate; and use her hands. (R. at 237). Plaintiff has a high school education. (R. at 26). Before the onset of her impairments, plaintiff worked as a phlebotomist, receptionist, and medical assistant. (R. at 26).

On February 19, 2015, plaintiff's application was denied at the initial level of administrative review. (R. at 81-96). On April 6, 2015, plaintiff requested an administrative hearing. (R. at 104-105).

---

[2] This background section is derived from the R&R with only minor stylistic changes. (Doc. 13, at 2-4, 9-11). Neither party objected to the R&R's recitation of these facts.

[3] The date from the R&R has been corrected.

On February 6, 2017, plaintiff, assisted by her counsel, appeared and testified during a hearing before Administrative Law Judge ("ALJ") Lawrence J. Neary.  (R. at 34).  Plaintiff's husband, Gregory Fuoti, and impartial vocational expert Michael J. Kibbler also appeared and testified.  On April 3, 2017, the ALJ issued a decision denying plaintiff's application for benefits.  (R. at 15-27).

In his April 2017 decision, the ALJ found that plaintiff met the insured status requirement of Title II of the Social Security Act through December 31, 2019. (R. at 17).  Then, plaintiff's application was evaluated at steps one through five of the sequential evaluation process.

At step one, the ALJ found that plaintiff did not engage in substantial gainful activity at any point between May 1, 2014 (plaintiff's alleged onset date) and April 3, 2017 (the date the ALJ's decision was issued) ("the relevant period").  (R. at 17).

At step two, the ALJ found that, during the relevant period, plaintiff had the following medically determinable severe impairment(s): fibromyalgia; cervical degenerative disc disease; social anxiety disorder; persistent depressive disorder; and thoracic outlet syndrome.  (R. at 17).  The ALJ also found that, during the relevant period plaintiff was diagnosed with gastroesophageal reflux disease, irritable bowel syndrome, migraine headaches, and hyperlipidemia.  (R. at 17-18).  The ALJ found that these impairments were non-severe.  (Id.).  Last,

the ALJ noted that in December 2014, an ultrasound revealed a node on plaintiff's thyroid that was suspicious for malignancy. (R. at 18). In January 2015, plaintiff had her thyroid removed. (Id.). The final pathology report revealed cancer. (Id.). Plaintiff recovered well and there is no evidence of recurrence and no ongoing symptoms related to her cancer. (Id.). The ALJ concluded that plaintiff's thyroid cancer does not satisfy the durational requirements of the Social Security Act. (Id.).

At step three, the ALJ found that, during the relevant period, plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 18).

Between steps three and four, the ALJ assessed plaintiff's Residual Functional Capacity ("RFC"). The ALJ found that, during the relevant period, plaintiff retained the RFC to engage in sedentary work as defined in 20 C.F.R. § 404.1567(a) subject to the following additional limitations:

> she can never perform repetitive pushing, pulling, or overhead reaching; can never climb ladders, ropes, or scaffolds; and can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. In addition, the claimant is further limited to simple, routine tasks involving only occasional changes in the work setting and only occasional interaction with the public and coworkers.

(R. at 20).

At step four, the ALJ found that, during the relevant period, plaintiff could not engage in her past relevant work. (R. at 26).  At step five, the ALJ found that, considering plaintiff's age, education and work experience, plaintiff could engage in other work that existed in the national economy.  (Id.)  To support his conclusion, the ALJ relied on testimony given by a vocational expert during plaintiff's administrative hearing and cited the following three (3) representative occupations: table worker (DOT 739.687-182); final assembler (DOT 713.687-018); and machine operator (DOT 681.685-030).  (R. at 27).

On June 2, 2017, plaintiff requested review of the ALJ's decision by the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council").  (R. at 151).  On March 27, 2018, the Appeals Council denied plaintiff's request for review.  (R. at 1-3).

On May 31, 2018, plaintiff initiated this action by filing a complaint.  (Doc. 1). In the complaint, plaintiff alleges that the ALJ's decision denying the application is incorrect.  (Doc. 1, at 3).  As relief, plaintiff requests that the court reverse the final decision denying her application for benefits, or in the alternative remand this case to the Commissioner to conduct a new administrative hearing. (Id.).

On August 8, 2018, the Commissioner filed an answer.  (Doc. 8).  In the answer, the Commissioner maintains that the decision holding that plaintiff is not

entitled to disability insurance benefits was made in accordance with the law and regulations and is supported by substantial evidence. (Doc. 8, ¶ 12). Along with his answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 5). The parties have fully briefed these issues and this case is ripe for resolution.

**JURISDICTION**

This court has federal question jurisdiction over this social security appeal. See 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determination under section 405 of this title."); see also 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business . . . .").

**DISCUSSION**

Before the magistrate judge, plaintiff argued that the ALJ erred in discounting the medical opinion of Dr. Bashline, plaintiff's treating physician. Judge Arbuckle found this issue had merit and was dispositive of the plaintiff's appeal. The government objects. After careful review, we will adopt the R&R.

Among other things, the treating physician concluded that the plaintiff could

> use her hands and fingers for fifteen percent of each workday; use her arms to reach forward, reach overhead, and push or pull for five percent of each eight-hour workday. Dr. Bashline also assessed that, depending on whether her condition was exacerbated, Plaintiff would need to change positions every thirty to sixty minutes.

(Doc. 13 at 12) (citing R. at 790-91). In his RFC, the ALJ concluded that this opinion is too restricting as the "objective tests do not demonstrate any significant findings, and the clinical examinations show tender points, but full strength, full hand grip, normal range of motion throughout, good coordination, normal reflexes, and intact sensation."[4] (R. at 25). Thus, the RFC indicates that the

---

[4] Specifically, with regard to the RFC, the ALJ concluded:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she can never perform repetitive pushing, pulling, or overhead reaching; can never climb ladders, ropes, or scaffolds; and can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. In addition, the claimant is further limited to simple, routine tasks involving only occasional changes in the work setting and only occasional interaction with the public and coworkers.

(R. at 20).

plaintiff can in fact do more than the opinion of plaintiff's treating physician in the record concludes she can do.  According to the R&R, the ALJ's decision is improper in that the ALJ's analysis cites treatment records and notes, which do not support "the ALJ's conclusion that Plaintiff would be able to handle and finger without limitation or the Plaintiff could engage in repetitive reaching."  (Doc. 13 at 22).

The Commissioner objects on the basis that the law permits an ALJ to discount a treating-source medical opinion without relying on a contrary medical opinion.  (Doc. 14, at 2-11).  The Commissioner further emphasizes that the ALJ properly followed the governing regulations in discounting Dr. Bashline's opinion. (Doc. 14, at 11-17).  We understand the Commissioner's position and assuming it is an accurate statement of the law, the ALJ's decision must nonetheless be supported by substantial evidence and comport with other aspects of the law.

It is also the law, however, that an ALJ may not reject uncontradicted medical opinions based on only lay reinterpretation of the medical evidence. Ferguson v. Schweiker, 765 F.2d 31 (3d Cir. 1985).  In Ferguson, the court found that "the ALJ acted improperly in disregarding the opinions of [the treating physician] by finding them contrary to the objective medical evidence contained in the file.  By independently interpreting the examination and test results, which do not discuss the plaintiff's physical limitations at issue, the ALJ impermissibly

substituted his own judgment for that of a physician; an ALJ is not free to set his own expertise against that of a physician who presents competent evidence." Id. at 37.

Here, the ALJ assigned only partial weight to the findings of Dr. Bashline, who was not only the plaintiff's treating physician, but also offered the only medical opinion that specifically addressed the plaintiff's physical limitations. We must decide if the ALJ's analysis amounts to appropriate evaluation of the medical opinions or an inappropriate substitution of his own lay opinion or "expertise" for the medical provider's opinions.

The government argues that the ALJ properly found that Dr. Bashline's opinion on the plaintiff's ability to handle, finger, and reach was too restrictive. This conclusion regarding Dr. Bashline's opinion is based on an alleged lack of support in plaintiff's treatment records for Dr. Bashline's assessed limitations of the plaintiff. (Doc. 14, at 12-13).

The record does not support the ALJ's conclusions. Plaintiff presented with spasms in her neck and 15 of 15 trigger points (R. at 446-61); routinely presented with 18 of 18 fibromyalgia tender points (R. at 634, 635, 639, 647, 648); presented with periarticular osteopenia consistent with early inflammatory arthritis (R. at 642); received a positive Phalen's Test and Tinel's Sign with a

negative nerve conduction study (R. at 637); and was frequently tender with palpation over her fingers, wrists, and elbows (R at 767).

Despite this medical evidence, the ALJ decided to reject the limitations found by the plaintiff's treating physician because "Dr. Bashline . . . relied too heavily on the claimant's subjective complaints and have made her restrictions too extreme." (R. at 25). Specifically, the ALJ concludes that "the objective tests do not demonstrate any significant findings, and the clinical examinations show tender points, but full strength, full hand grip, normal range of motion throughout, good coordination, normal reflexes, and intact sensation. (Id.). However, as mentioned above, several medical records support Dr. Bashline's opinion, and the ALJ fails to rely on any medical evidence clearly contradicting the treating physician's opinion. Considering the ALJ relied on medical evidence that neither discusses the plaintiff's physical limitations nor clearly contradicts the opinion of the plaintiff's treating physician, we must conclude that it is his "lay opinion" and interpretation of the plaintiff's medical records. We find that this analysis is an improper rejection of a medical opinion based upon the ALJ's own interpretation of the medical records. This conclusion is not supported by substantial evidence, and the plaintiff's appeal will be granted.

**CONCLUSION**

Based on the preceding, the government's objections (Doc. 14) shall be overruled, Judge Arbuckle's R&R (Doc. 13) shall be adopted, the Commissioner's decision denying plaintiff's application for benefits shall be vacated, and this case shall be remanded to the Commissioner to conduct a new administrative hearing in accordance with this opinion. An appropriate order shall issue.

**BY THE COURT:**

**Date: March 16, 2020**            **s/ James M. Munley**
                                    **JUDGE JAMES M. MUNLEY**
                                    **United States District Court**